# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

――――――――――

Nº 18-CV-00004 (JFB)

――――――――――

CHRISTOPHER HERON,

Petitioner,

VERSUS

THOMAS GRIFFIN,

Respondent.

――――――――――

**MEMORANDUM AND ORDER**
March 5, 2019

――――――――――

JOSEPH F. BIANCO, District Judge:

Christopher Heron (hereinafter "petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York state court. On October 19, 2012, following a jury trial, petitioner was convicted of Murder in the Second Degree (New York Penal Law § 125.25(1)) and Criminal Possession of a Weapon in the Fourth Degree (New York Penal Law § 265.01(2)). (T. 585-87, ECF No. 6-3.)[1] Petitioner was thereafter sentenced to an indeterminate term of imprisonment of twenty-two years to life on the murder conviction and a concurrent term of one-year imprisonment on the weapon-possession conviction. (Sent'g 24-25, ECF No. 6-7.)[2]

In the instant habeas petition, petitioner challenges his conviction as unconstitutional on the grounds that: (1) he was denied effective assistance of counsel; and (2) the trial prosecutor suppressed evidence. (Pet. for Writ of Habeas Corpus ("Pet.") 6, ECF No. 1.) For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

## I. BACKGROUND

### A. Factual Background

The following facts are adduced from the underlying record.

#### 1. Underlying Crime

On the night of August 11, 2012, petitioner and William Mena (hereinafter, "Mena") were

――――――――――

[1] Citations to "T." are references to the transcript of petitioner's October 2012 jury trial.

[2] Citations to "Sent'g" are citations to the transcript of petitioner's May 2013 sentencing.

working as "PM drivers"—the 6:00 p.m. to 6:00 a.m. shift—for Ollie's Taxi and Airport Service ("Ollie's"), located at 851 Hempstead Turnpike, Franklin Square, New York. (T. 421-24.) During that shift, petitioner was assigned to a black, unmarked town car (car number 70) and Mena was assigned to a white Crown Victoria (car number 58). (T. 425.) At approximately 9:30 p.m., dispatch assigned a $6.50 pick-up at Wendy's in Franklin Square to petitioner over the radio. (T. 360-61, 364-65.) When petitioner arrived at the Wendy's, he reported to dispatch that he saw car number 58 leaving with a passenger. (T. 366.)

Later that shift, in the early morning hours of August 12, 2012, petitioner was sitting in his taxi cab in a municipal parking lot—Town of Hempstead Municipal Parking Field Number 7—off Hempstead Turnpike on James Street. (T. 330-31, 341-44, 426-27.) Ollie's drivers often waited in the lot for their next assignments. (T. 426.) At approximately 12:45 a.m., Mena pulled into the lot, stopping partially behind petitioner's vehicle. (T. 331-32, 341-44, 426-27; People's Ex. 23 at 11:21.[3])

Petitioner exited his car and approached the passenger side of Mena's vehicle. (People's Ex. 23 at 11:36.) An argument ensued, and petitioner reached through Mena's passenger window, punching him twice. (*Id.* at 12:59.) Mena exited his vehicle, walked around to the passenger side, and was punched twice more by petitioner. (*Id.* at 13:04-13:16.)

After a brief pause, petitioner reached into his pocket, grabbed a knife, and charged at Mena. (*Id.* at 13:16-13:26.) Petitioner swung aggressively, landing an overhead blow to Mena's chest. (*Id.* at 13:26-13:27.) Petitioner then swung again, but Mena blocked the blow, causing the knife to fly from petitioner's hand.

(*Id.* at 13:30-13:33.) Petitioner retrieved the knife and struck Mena several more times. (*Id.* at 13:33-13:45.) Mena then stepped backwards, hunched over, and grabbed his stomach before falling to the ground. (*Id.* at 13:45-13:56.) Petitioner fled the scene on foot. (*Id.* at 13:54-14:04.)

An autopsy of Mena's body revealed three stab wounds, two on the left side of Mena's chest and one on the left side of his abdomen. (T. 295-96.) The three stab wounds caused Mena's death. (T. 303.)

### 2. Trial

Petitioner was tried by a jury in Supreme Court, Nassau County. The Court will summarize the portions of the trial relevant to petitioner's claims.

#### a. Jury Selection (Juror Number 10)

During voir dire, potential jurors were instructed to approach the court with scheduling conflicts that would make them unable to serve. (J.S. 9, ECF No. 6-2.)[4] Additionally, the court asked the following two questions: (1) "Has any member of your family ever participated in a criminal case as a complainant or witness for the government?"; and (2) "Have you or any member of your immediate family participated in a criminal case as a defendant or a witness for the defense . . . ?" (J.S. 130-31.) Juror Number 10 did not approach the bench with a scheduling conflict or respond to these two questions. (*See* J.S. 123, 130-31, 165.)

#### b. Presentation of Evidence

The prosecution called numerous witnesses to the stand, including Nassau County Police detectives (T. 200, 249, 401, 434, 460), Mena's sister (T. 283), the

---

[3] "People's Ex. 23" is a video taken from a home surveillance system overlooking the parking lot where the incident occurred. Citations to "People's Ex. 23" include references to the elapsed time of the video.

[4] Citations to "J.S." are references to the transcript of petitioner's October 2012 jury selection.

physician who conducted the autopsy (T. 288), an eyewitness (T. 325), Ollie's dispatcher on the night of the incident (T. 354), and Ollie's operations manager (T. 421). Defense counsel cross-examined each witness called by the prosecution (*see generally* T. 224-48, 268-83, 306-21, 337-54, 378-96, 413-21, 427-34, 448-60, 482-97), except Mena's sister, who only testified that she identified Mena at the Medical Examiner's Office (*see generally* T. 283-87.) In addition, the video of the incident, People's Ex. 23, was played in open court. (T. 426.)

### c. Waiver of Petitioner's Right to Testify

After the prosecution rested, the judge asked defense counsel, "For the record, [counsel], are you putting on a case?" (T. 501.) Defense counsel responded, "No, your Honor." (*Id.*) The judge continued, "So tomorrow morning, you rest in front of the jury." (*Id.*) Defense counsel confirmed, "Yes." (*Id.*) The trial was adjourned for the evening. (*Id.*)

The next morning, when asked whether the defense would put on a case, defense counsel responded, "No, your Honor. At this time, the defense rests." (T. 511.) The record does not reflect any disagreement by petitioner with counsel's responses or decision to not put on a case. (*See* T. 501, 511.)

### d. Closure of the Courtroom for the Jury Charge

After closing statements, the clerk ordered the courtroom sealed for the jury charge, saying: "The Judge is about to charge the jury. If anyone wishes to leave, you must do so now. No one is permitted to enter or leave the courtroom during the Court's charge." (T. 541.) No objections were registered. (*See id.*)

The jury entered the courtroom, and the charge was delivered. (T. 541-42.)

### e. Court's Handling of Jury Notes

During deliberations, the jury sent out two notes. (T. 572.) The judge shared the content of the notes with both attorneys. (*Id.*) The first note requested to view evidence, including the video of the incident, and the second sought clarification on the intent requirements for both charges. (*Id.*) The judge then called for the jury and proceeded to reread the intent portion of both charges while the audio-visual department set up the video in the jury room for the jurors to review. (T. 572-76.) No objections were registered. (*See id.*)

Later that afternoon, Juror Number 10 sent out two notes indicating that a personal matter would conflict with the next day's deliberations. (T. 577.) The judge then gave separation instructions, released the jury, and spoke with Juror Number 10 individually in the presence of the prosecutor, defense counsel, and petitioner. (T. 577-81.) The judge discussed the juror's pending civil matter that presented the scheduling conflict and informed the juror that the judge presiding over that case had agreed to reschedule. (T. 581-83.) No objections were registered. (*See* T. 577-83.)

### f. Verdict and Sentence

The jury found petitioner guilty of Murder in the Second Degree (N.Y.P.L. § 125.25(1)) and Criminal Possession of a Weapon in the Fourth Degree (N.Y.P.L. § 265.01(2)). (T. 585-87.) As discussed below, petitioner then moved to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30, which was denied by the trial court. The trial court then sentenced petitioner to an indeterminate term of imprisonment of twenty-two years to life for his murder conviction and a concurrent term of one-year

imprisonment for his weapon-possession conviction. (Sent'g 24-25.)

B. Procedural History

1. Section 330 Motion

On March 5, 2013, prior to sentencing, petitioner filed a motion in Supreme Court, Nassau County, to set aside his guilty verdict pursuant to New York Criminal Procedure Law § 330.30 ("Section 330"). (Section 330 Mot., ECF No. 6-4.) In his motion, petitioner argued that trial counsel was ineffective because "he wanted to testify in his own defense and was denied that opportunity by his attorney." (Section 330 Mot. 3, 6.) Petitioner further asserted that his failure to testify precluded counsel from arguing justification to the jury and the jury from considering lesser-included charges (Section 330 Mot. 8), requests which were both denied by the trial judge (T. 503-06, 508-11).

On April 18, 2013, the Supreme Court, Nassau County, denied petitioner's motion because his allegations were unsupported by the record. (Section 330.30 Decision, ECF No. 6-6.)

2. Direct Appeal

On May 14, 2013, the day after sentencing, petitioner filed a notice of appeal with the Appellate Division, Second Department. (Appellant's Br. 4, ECF No. 6-8.) On appeal, appellate counsel argued that the Supreme Court erroneously denied petitioner's Section 330 motion because of its reliance on petitioner "'remain[ing] mute' when his attorney told the court that he did not intend to put on a direct case."[5] (Id. at 22.) He further asserted that "[t]he Supreme Court could have avoided any question about the involuntariness of Mr. Heron's waiver of his

constitutional right to testify by canvassing the defendant about whether he had discussed this right with his counsel and, knowing and understanding it, freely wished to waive it." (Id.)

In a *pro se* supplemental brief, petitioner argued that his trial counsel was ineffective for three additional reasons. (Def.'s Pro Se Suppl. Appellate Br., ECF No. 6-10.) First, petitioner claimed that counsel "fail[ed] to object to the Trial Judge closing the courtroom [during the jury charge] without given [sic] any reason for doing so," (id. at 19), and that "counsel had no strategic or other legitimate explanation for failing to object" (id. at 25). Second, petitioner asserted that counsel failed to object to the manner in which the court handled the jury note requesting clarification on the intent requirements for both charges. (Id. at 33.) Finally, petitioner argued that counsel failed to object to the manner in which the court handled the two additional notes sent out by Juror Number 10 and failed to move for both a mistrial and to disqualify Juror Number 10 as "being grossly unqualified" or to request an inquiry into "why juror #10 filed [sic] to answer the court's questions during voir dire." (Id. at 48-49.)

On July 8, 2015, the Second Department affirmed the trial court's judgment of conviction and sentence. *People v. Heron*, 130 A.D.3d 754 (2d Dep't 2015). With respect to petitioner's ineffective assistance claim raised in his Section 330 motion, the court stated it was "not properly raised in his motion" because it "rest[ed] on matters outside the record." *Id.* at 755. Moreover, the court stated that petitioner's claim "constitute[d] a 'mixed claim of ineffective assistance'" because it was "based, in part, on matter appearing on the record and, in part, on matter outside the record." *Id.* at 756. Since the matter on the

---

[5] Petitioner raised numerous other issues in his direct appeal not relevant to the instant habeas action. (*See generally* Appellant's Br.)

record did not demonstrate ineffective assistance, the court suggested petitioner file a motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10 ("Section 440"). *Id.* Lastly, the court dismissed the claims raised in petitioner's *pro se* supplemental brief as meritless. *Id.* at 756-57.

On July 21, 2015, petitioner sought leave to appeal to the New York Court of Appeals (Def.'s COA Leave Letter, ECF No. 6-13), which the Court of Appeals thereafter denied, *People v. Heron*, 26 N.Y.3d 968 (2015).

### 3. Section 440 Motion

On March 14, 2016, petitioner filed a *pro se* Section 440 motion in Supreme Court, Nassau County, to vacate his judgment of conviction or, alternatively, order an evidentiary hearing. (Def.'s 440 Mot., ECF No. 6-16.) Petitioner again asserted that he was denied effective assistance because his trial counsel not only "improper[ly] and otherwise invalid[ly] waive[d] [his] fundamental and constitutional right to have testified," but also "never consulted with [him] about such constitutional right." (*Id.* at 5, 19). Petitioner further argued that trial counsel failed to conduct adequate pretrial investigations into: (1) whether Mena had a "reputation for being dishonest"; (2) whether the crime scene had been "properly secured and handled appropriately";[6] (3) Mena's toxicology report; (4) Mena's criminal history; and (5) Mena's propensity for violence. (*Id.* at 8-15.) With respect to the police's handling of the crime scene and Mena's toxicology report, petitioner alleged "*Brady* violations," in that he never received the "complete" surveillance footage and the "complete autopsy reports." (*Id.* at 11, 15, 22.) Lastly, petitioner alleged

that counsel failed to apprise him of any extended plea offers. (*Id.* at 24.)

On December 8, 2016, the trial court denied petitioner's Section 440 motion in its entirety, finding petitioner's allegations "self-serving, conclusory and meritless." (Order Denying 440 Mot., ECF No. 6-18.) The court stated that petitioner's "unsubstantiated and unsupported allegations are insufficient to create any issue that would warrant a hearing." (*Id.*) The court also found that petitioner "failed to establish how he was prejudiced by the representation he received." (*Id.*)

On September 28, 2017, the Second Department denied petitioner's application for leave to appeal the decision denying his Section 440 motion. (Order Denying Leave to Appeal, ECF No. 6-22.)

### 4. Freedom of Information Law ("FOIL") Request

On May 25, 2016, petitioner filed a Freedom of Information Law ("FOIL") request with the Nassau County District Attorney's Office, seeking copies of the "pre-Indictment Plea offer" and "ADA status sheet" with respect to his case. (Pet'r's FOIL Request, ECF No. 8.) Petitioner's request was denied in its entirety because neither document existed in the prosecution file. (Denial of FOIL Request, ECF No. 8.) The District Attorney's Office stated that it was under no obligation to turn over records that did not exist. (*Id.* (citing *Reubens v. Murray*, 194 A.D.2d 492, 492 (1st Dep't 1993)).) The District Attorney's Office also noted that even if the "ADA status sheet" did exist, it would be exempt from disclosure as attorney work product. (*Id.* (citing C.P.L. §§ 240.10(2), (3); C.P.L.R. § 3101(c); *Woods v. Kings Cty. Dist.*

---

[6] Petitioner claimed "counsel's lack of pretrial investigation reared towards the presentation of such viable defense of innocence," specifically defense counsel's cross-examination of the eyewitness, which petitioner claims was "woefully inadequate and ineffective" because the witness's testimony and the timeframes of the incident that he provided did not directly correspond to the surveillance video. (Def.'s 440 Mot. at 26-29.)

*Attorney's Office*, 234 A.D.2d 555, 556 (2d Dep't 1996)).)

### 5. The Instant Petition

On January 2, 2018, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the following grounds: (1) "[i]neffective [a]ssistance of [c]ounsel"; and (2) "trial prosecutor's suppression of evidence." (Pet. 6.) Petitioner requested that the Court grant him the following relief: "Provide [him] with the opportunity to proceed on the merits of all claims exhausted in state courts, and a hearing." (Pet. 16.) On April 5, 2018, respondent filed an affidavit and memorandum of law in opposition, arguing that petitioner's claims are meritless. (Mem. in Opp'n, ECF No. 6.) The Court has fully considered the parties' submissions, as well as the underlying record.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of

law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on the grounds that: (1) he was denied effective assistance of counsel at trial; and (2) the trial prosecutor suppressed evidence. (Pet. 6.) Bearing in mind petitioner's *pro se* status, the Court has reviewed petitioner's briefs in support of his Section 330 motion, direct appeal to the Second Department, and Section 440 motion. "[T]he Court has construed [petitioner's] submissions liberally, 'to raise the strongest arguments that they suggest.'" *Osborne v. Graham*, No. 15-CV-6042 CJS, 2018 WL 1827673, at *7 (W.D.N.Y. Apr. 17, 2018) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Petitioner has argued ineffective assistance on the grounds that his attorney: (1) never informed him of his constitutional right to testify in his own defense and improperly waived that right on his behalf (Def.'s 440 Mot. 5, 19); (2) failed to object to the closure of the courtroom during the jury charge and the alleged mode-of-proceeding errors in the court's handling of jury notes (Def.'s Pro Se Suppl. Appellate Br. 19, 33, 48-49); (3) failed to adequately investigate the victim's toxicology report, the police's handling of the crime scene,[7] and the victim's reputation for dishonesty, criminal history, and propensity for violence (Def.'s 440 Mot. 8-15, 21-22);

and (4) never apprised him of an extended plea offer (*id.* at 24).

With respect to petitioner's suppression of evidence claim, petitioner alleged two *Brady* violations in his Section 440 motion: (1) the prosecution did not turn over the victim's "'complete autopsy reports' which would include the 'toxicology reports' and its results" (*id.* at 11); and (2) the prosecution never disclosed the "videotape footage of moments after the defendant fled" (*id.* at 22). Additionally, in his habeas petition, petitioner referenced the denial of "certain specific and particularized discovery documentation from the Nassau County District Attorney's Office" requested through his FOIL request. (Pet. 6.)

Respondent contends that petitioner's claims are meritless. (Mem. in Opp'n 13-16.) For the following reasons, the Court concludes that petitioner is not entitled to habeas relief and denies the instant petition on the merits.

### A. Procedural Requirements

#### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court with jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state

---

[7] Within petitioner's claim that his attorney failed to adequately investigate the handling of the crime scene—namely the portions of the video petitioner claims he never received—petitioner seemingly argues that this resulted in an ineffective cross-examination of the eyewitness. Although it is unclear whether petitioner claims the supposedly ineffective cross-examination was merely a result of counsel's alleged failure to investigate the surveillance video or an independent ineffective assistance claim, as discussed *infra*, it nonetheless fails on the merits.

courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (alteration in original) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must fairly present his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (collecting cases). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

## 2. Application

As a threshold matter, respondent has failed to argue lack of exhaustion for any of petitioner's claims. (*See generally* Mem. in Opp'n.) Thus, it is within the Court's discretion to review any claims that are unexhausted. *See Sanders v. Sullivan*, 863 F.2d 218, 221-22 (2d Cir. 1988).

## B. Merits

### 1. Ineffective Assistance of Trial Counsel

#### a. Legal Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

In order to meet the first prong of the *Strickland* test, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms' . . . Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial." *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688); *see also Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) ("When assessing whether or not counsel's performance 'fell below an objective standard of reasonableness . . . under prevailing professional norms,' *Strickland* directs us to consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view." (quoting *Strickland*, 466 U.S. at 688-89)). Therefore, "[j]udicial scrutiny of a counsel's performance must be highly deferential . . . [and] every effort [must] be made to eliminate the distorting effects of hindsight." *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689); *see also Eze v. Senkowski*, 321

F.3d 110, 125 (2d Cir. 2003) (explaining that scrutiny is deferential because "it is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable" (quoting *Strickland*, 466 U.S. at 689)).

In particular, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689); *see also Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (explaining that in order to show ineffective assistance, "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (quoting *Strickland*, 466 U.S. at 689)); *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that a trial counsel's decisions were objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'" (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998))). For that reason, "[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable . . . and there is a strong presumption that counsel's performance falls 'within the wide range of reasonable professional assistance.'" *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689-90); *see also Pavel v. Hollins*, 261 F.3d 210, 2l6 (2d Cir. 2001) (explaining that representation is deficient only if, "in light of all the circumstances, the identified acts or omissions were outside the *wide* range of professionally competent assistance" (quoting *Strickland*, 466 U.S. at 690) (emphasis in original)).

Finally, in determining whether one or more errors by trial counsel renders the representation constitutionally deficient under the first prong of *Strickland*, the Court "need not decide whether one or another or less than all of these . . . errors would suffice, because *Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that 'some errors [ ] have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture.'" *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 695-96).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel*, 261 F.3d at 216 (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

b. Application

i. Right to Testify

It is well established that "a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Rock v. Arkansas*, 483 U.S. 44, 49 (1987)). The right to testify is

"personal" and can only be waived by the defendant. *Brown v. Artuz*, 124 F.3d 73, 77-78 (2d Cir. 1997). Because defendants are not expected to know of their right to testify, *see Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001), "defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify," *Brown*, 124 F.3d at 79. Defense counsel must further "inform the defendant that the ultimate decision whether to take the stand belongs to the defendant." *Id.* Accordingly, the burden of ensuring that the defendant is aware of his right to testify is a component of effective assistance of counsel, and any claim that defense counsel has failed to meet this burden must satisfy the two-prong *Strickland* standard. *Id.*

With respect to the first *Strickland* prong, deficient performance, the petitioner must proffer sufficient evidence to support his allegations that his counsel failed to inform him of his right to testify and/or overrode his desire to testify. *See Bennett*, 663 F.3d at 86. The petitioner bears the burden of proving his claim. *Chang*, 250 F.3d at 86. A generic claim based solely on the petitioner's "own highly self-serving and improbable assertions" will not satisfy this burden. *Id.* For example, in *Bennett*, the Second Circuit held that counsel's performance was not deficient because no evidence supported the petitioner's "blanket assertion" that his counsel never informed him of his right to testify and overrode his desire to testify. 663 F.3d at 77-82, 86-87.

Nevertheless, claims involving "off-the-record interactions" with trial counsel "cannot be determined by examining the motion, files, and records before the district court." *Chang*, 250 F.3d at 85. District courts may, however, use methods to expand the record without

having to hold an evidentiary hearing regarding interactions with trial counsel. *Id* at 86 (citing *Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977)). For example, in *Chang*, the Second Circuit affirmed the district court's finding that an evidentiary hearing was not necessary after the record was supplemented with a "detailed affidavit from trial counsel" describing the circumstances surrounding the defendant's failure to testify. *Id.* at 85-86. Accordingly, "[w]here . . . a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." *Castrillo v. Breslin*, No. 01 Civ. 11284 GBD GWG, 2005 WL 2792399, at *14 (S.D.N.Y. Oct. 11, 2005) (collecting cases).

Here, petitioner's claims regarding his right to testify are nothing more than unsupported, blanket assertions. Petitioner's affidavit—submitted with his Section 330 motion—reads in part, "Despite advising my attorney of my wishes, I was not given the opportunity to testify . . . ." (Section 330 Mot. Ex. B.) Additionally, in his Section 440 motion, petitioner claims his attorney "never consulted with [him] about [his] constitutional right [to testify]." (Def.'s 440 Mot. 19.) No on-the-record evidence exists regarding discussions between petitioner and his trial counsel about petitioner's decision to testify or not, and no objection was registered by petitioner when his counsel announced that the defense rested. (*See* T. 501, 511.)

Here, the record does not contain a sworn statement from petitioner's trial counsel regarding whether he advised petitioner of his right to testify or the circumstances surrounding petitioner's waiver of that right.[8]

---

[8] In respondent's Affirmation in Opposition to petitioner's Section 330 motion, the prosecutor recounted conversations he had with defense counsel during and after trial. (Resp't's Opp'n to 330 Mot. 3-4,

ECF 6-5.) The prosecutor stated, "On one of the last days of trial, . . . counsel indicated to me that . . . the defendant had decided not to testify." (*Id.* at 4.) He further stated, "Upon receiving [petitioner's Section

Petitioner's failure to object when his attorney announced that he rested without calling him to the stand did not constitute a waiver of petitioner's right to testify. *See Chang*, 250 F.3d at 84 ("[A]bsent something in the record suggesting a knowing waiver, silence alone cannot support an inference of such a waiver."). With respect to whether defense counsel ever advised petitioner of his right to testify, the Court need not request an affidavit to supplement the record because, even assuming defense counsel's performance was deficient, petitioner fails to satisfy the prejudice prong of *Strickland*. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *see also Johnson v. United States*, No. 3:14-cv-01619 (VLB), 2018 WL 1035809, at *8 (D. Conn. Feb. 23, 2018) (dismissing petitioner's claim on prejudice grounds after determining that the trial counsel's affidavit was not sufficiently detailed regarding the circumstances surrounding the waiver of petitioner's right to testify); *Mallet*, 432 F. Supp. 2d at 379-80 ("But, even assuming that [counsel] did neglect to inform [petitioner] of his right to testify, the Court dismisses this claim because [petitioner] fails to demonstrate a reasonable probability that his proposed testimony would have changed the outcome of the case.").

Petitioner cannot demonstrate that he was prejudiced by his failure to testify. Although petitioner did not specify in his petition exactly how his failure to testify—or any of his claims

for that matter—resulted in prejudice, the Court did review his Section 330 and Section 440 motions. In his motions, petitioner maintains that his failure to testify precluded his attorney from successfully arguing for a justification charge or lesser included charges—Manslaughter in the Second Degree (N.Y. Penal Law § 125.15) and Criminally Negligent Homicide (N.Y. Penal Law § 125.10)—to the jury. (*See* Def.'s 330 Mot. 8; Def.'s 440 Mot. 7 & n.1.) In his Section 330 motion, petitioner conceded that "the video evidence did not support either of those potential instructions." (Def.'s 330 Mot. 8.) However, petitioner asserted that, because the video is without sound, his testimony could have provided "the dialogue between the deceased and the defendant which would have established a basis in the record for both of the charges requested by trial counsel." (*Id.*) Additionally, in his Section 440 motion, petitioner claims that he would have testified that Mena made "physical threats," and "became combative and verbally threatened to do bodily harm to [him]." (Def.'s 440 Mot. 14.) Petitioner further would have testified that he had "personally witnessed Mr. Mena in an act of violent rage before" and he was aware of Mena's "propensity for violence" and "heavy drug use[]," which "raise[d] the level of [his] awareness and [his] 'subjective belief' of harm." (*Id.* at 14-15.) This, petitioner claims, caused him to "act[] out in an aggressive manner." (*Id.* at 15.) Petitioner's purported reasons for his desire to testify do

---

330) motion, . . . [i]n a telephone conversation, . . . [counsel] denied the allegations that he had prevented the defendant from testifying and had not discussed this option with the defendant." (*Id.*) Although other courts have relied on similar assertions made by respondent's counsel, *see Shepherd v. Portunda*, Nos. 99-CV-1866 (JBW), 03-MISC-0066 (JBW), 2003 WL 22964538, at *9 (E.D.N.Y. Nov. 10, 2003) ("Respondent's counsel asserted . . . that she had spoken with petitioner's trial attorney and was advised . . . that he discussed at length with petitioner whether he should testify in his own

defense and that [he] and petitioner agreed that he should not testify. Petitioner's assertion that he was unaware of his right to testify and that counsel never broached the topic with him is unsupported by any evidence and is not credible."), the Court declines to do so because the prosecutor's affirmation does not constitute a sworn statement by *petitioner's trial counsel*, pursuant to *Chang*, demonstrating that petitioner was properly advised of his rights, *see Mallet v. Miller*, 432 F. Supp. 2d 366, 380 n.9 (S.D.N.Y. 2003).

not support his ineffective assistance of counsel claim.

Even if petitioner had testified, the Court concludes that there is no "reasonable probability that the result of the proceeding would have been different." *Henry*, 409 F.3d at 63. First, the evidence does not support the argument that petitioner's use of deadly force was justified because, under New York law, a justification defense is unavailable to the "initial aggressor." N.Y. Penal Law § 35.15(1)(b). The video evidence demonstrates that, in the altercation with Mena, petitioner acted as the initial aggressor. Petitioner exited his vehicle and approached Mena, punching him numerous times before reaching for a knife and stabbing him. *See People v. Soriano*, 188 A.D.2d 420, 420 (1st Dep't 1992) (holding that the defendant acted as the initial aggressor in pushing the victim, who was initially unarmed, while stabbing him with a sharp-pointed tool). Petitioner even ran to retrieve his knife to continue his attack after it flew out of his hand. Even if Mena made verbal threats as petitioner asserts, *see People v. Baez*, 118 A.D.2d 507, 508 (1st Dep't 1986) ("abusive language does not constitute provocation"), he did not throw a single punch, let alone confront petitioner with deadly physical force. *See People v. Small*, 80 A.D.3d 786, 787 (2d Dep't 2011) (affirming the denial of a justification charge request because no reasonable view of the evidence supported notion that victim was armed or about to use deadly physical force against the defendant); *People v. Kerley*, 154 A.D.3d 1074, 1075-76 (3d Dep't 2017) (affirming the denial of a justification charge request because the defendant—who was the "first, and only,

person to pull a knife" after approaching the unarmed victim "while cursing and asking him a confrontational question"—was the initial aggressor). Accordingly, because petitioner acted as the initial aggressor, there is no basis to conclude that his testimony would not have aided a justification charge, let alone change the jury's verdict.

Moreover, even assuming *arguendo* that petitioner was not the initial aggressor and that Mena did confront him with deadly physical force, petitioner's use of deadly force was still not justified. Under New York law, the justified use of deadly force in self-defense requires the following three elements: (1) the defendant "subjectively believes that the use of deadly force is necessary"; (2) "a reasonable person in defendant's position would believe that the use of deadly force is necessary"; and (3) "the defendant does not 'know that he can with complete safety as to himself and others avoid the necessity of using deadly force by retreating.'" *Brown*, 124 F.3d at 81 (quoting N.Y. Penal Law § 35.15(1)-(2)). In *Brown*, the petitioner similarly asserted that his counsel failed to advise him of his right to testify and prevented him from testifying, which he claimed would have aided a justification defense. 124 F.3d at 80-81. The petitioner's claim in *Brown* ultimately failed because, "[a]lthough [his] purported testimony would have supported the first element, and perhaps the second as well, nothing in his offer of proof would have been sufficient to support a reasonable inference in his favor on the third element of the justification defense." 124 F.3d at 81. Like the petitioner in *Brown*, even assuming petitioner could satisfy the first two elements,[9] he would fail to satisfy the third.

---

[9] As discussed *infra*, petitioner argues, to no avail, that counsel was ineffective for failing to investigate Mena's toxicology report and that the government violated its *Brady* obligations by not disclosing the report. Although a victim's drug usage is relevant to a justification defense, in particular whether the defendant subjectively believed that the use of deadly

force was necessary and whether that belief was objectively reasonable, *see, e.g.*, *People v. Frazier*, 6 A.D.3d 455, 456 (2d Dep't 2004) (finding whether "the victim had ingested PCP before the altercation . . . was relevant on the issue of whether it was objectively reasonable for the defendant to perceive him as dangerous"); *People v. Chevalier*, 220 A.D.2d 114, 118

Petitioner had numerous opportunities to retreat and avoid the need to use deadly force.[10] *Id.* ("If a defendant confronted with deadly force knows retreat can be made with complete safety and fails to do so, the defense [of justification] is lost." (quoting *In re Y.K.*, 87 N.Y.2d 430, 434 (1996))). Accordingly, petitioner's testimony would not have aided a justification defense or changed the outcome of the trial. *See People v. Reynoso*, 73 N.Y.2d 816, 818 (1988) ("[A] court need not charge justification if no reasonable view of the evidence establishes the elements of the defense.") (internal citations omitted).

Petitioner's claim that his failure to testify precluded his attorney from successfully arguing for lesser-included charges also lacks merit. The trial judge submitted a lesser-included charge—Manslaughter in the First Degree (T. 508-09, 563-65)—which the jury rejected, finding petitioner guilty of Murder in the Second Degree (T. 585). Moreover, based on the record in this case, it is clear that the jury would have likewise rejected charges of Manslaughter in the Second Degree and Criminally Negligent Homicide, even if petitioner had testified. In short, there is no reasonable view of the evidence to support a finding of either Manslaughter in the Second Degree or Criminally Negligent Homicide.

See N.Y. Crim. Proc. Law § 300.50 ("[T]he court in its discretion may . . . submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. If there is no reasonable view of the evidence which would support a finding such a finding, the court may not submit such lesser offense."); *Munoz v. Burge*, No. 02-CV-6198 (NGG), 2010 WL 3394696, at *12 (E.D.N.Y. Aug. 20, 2010) ("A defendant is entitled to a lesser-included offense charge only where there is a 'reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater.'" (quoting *People v. Glover*, 57 N.Y.2d 61, 63–64 (1982))); *cf. Colon v. Smith*, 723 F. Supp. 1003, 1007-08 (S.D.N.Y. 1989) (holding that counsel was not ineffective for failing to argue for two lesser included offenses because no reasonable view of the evidence could support a finding of either). Therefore, petitioner has failed to demonstrate prejudice

Additionally, had petitioner testified, it is highly unlikely that the jury would have credited his testimony given the overwhelming evidence of intentional murder. *See Davis v. Graham*, No. 06-CV-0659T,

---

(1st Dep't 1996) ("[T]he introduction of the toxicology report in this case—to enhance the objective description of the victim's behavior so as to better judge the reasonableness of the defendant's conduct—was highly relevant to the justification defense."), *aff'd.* 89 N.Y.2d 1050, the Court does not analyze whether petitioner satisfies these elements because he nevertheless acted as the initial aggressor and had numerous opportunities to retreat, which refutes any argument that his conduct was justified. *See People v. Spinelli*, 165 A.D.2d 888, 888 (2d Dep't 1990) ("[T]he record clearly establishes that the defendant was the initial aggressor, he could have retreated with complete safety . . . , and his use of deadly force was not necessary to avert the imminent use of such force."); *People v. Richardson*, 155 A.D.2d 488, 489 (2d Dep't 1989) (holding that the defendant was not justified in his use of deadly physical force because "there was ample evidence to enable the jury to find that

the defendant initiated the incident, was not acting in self-defense, and, even if he was not the initial aggressor, had every opportunity to retreat safely without the use of deadly force").

[10] Trial counsel argued that Mena, having partially blocked in petitioner's vehicle when he entered the lot, "ma[de] it impossible for [petitioner] to leave the area." (T. 504.) Like the trial court, the Court disagrees. Petitioner had numerous opportunities to retreat. For example, petitioner could have fled on foot after retrieving his knife that went flying from his hand, rather than continuing to attack Mena. *See People v. Sanchez*, 31 N.Y.3d 949, 950 (2018) ("[O]n this record, there was no reasonable view of the evidence that defendant could not safely retreat at the time that deadly physical force was used.").

2010 WL 597960, at *8 (W.D.N.Y. Feb. 17, 2010) (holding that petitioner failed to establish prejudice because, had he testified, his characterization of the incident as an accident would nonetheless have been contradicted by overwhelming evidence of intentional murder); *see also Burkhardt v. Bradt*, 12-CV-1919 (ADS), 2016 WL 7017363, at *11 (E.D.N.Y. Dec. 1, 2016) (finding that petitioner was not prejudiced by his attorney's alleged deprivation of his right to testify given the government's "extremely strong" case); *Christie v. United States*, Nos. 13 Civ. 7780 (RWS), 08 Cr. 1244 (RWS), 2014 WL 2158432, at *12 (S.D.N.Y. May 23, 2014) (finding no prejudice by counsel's alleged failure to advise petitioner of his right to testify given the "devastating evidence entered against him"). Accordingly, as petitioner fails to satisfy the prejudice prong of the *Strickland* standard, his ineffective assistance claim with regard to his right to testify is denied.

ii. Counsel's Failure to Object

Petitioner contends that trial counsel was ineffective for failing to object to (1) the closure of the courtroom during the jury charge, (2) the trial court's handling of the jury note seeking clarification on the intent requirements, and (3) the trial court's handling of notes sent out by Juror Number 10. Petitioner also claims counsel was ineffective for failing to move the trial court to disqualify Juror Number 10. The Court disagrees.

When determining whether counsel was unreasonable for failing to object, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Cox*, 387 F.3d at 198 (quoting *Strickland*, 466 U.S. at 689). There is also a presumption that counsel's actions "might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Several reasons may justify forgoing objections: "the conclusion that additional

objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Davidson v. Cunningham*, No. 16-CV-01125 (JFB), 2017 WL 3738560, at *22 (E.D.N.Y. Aug. 29, 2017) (quoting *Taylor v. Fischer*, No. 05 Civ. 3034 (GEL), 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006)).

First, with regard to the closure of the courtroom, the New York Court of Appeals has held that temporarily closing the courtroom, after inviting those present to remain, for the purpose of conveying the jury charge without interruption is a reasonable limitation of public access and does not deprive the defendant of his constitutional right to a public trial. *See People v. Colon*, 71 N.Y.2d 410, 417-18 (1988). Thus, an objection would not have succeeded, and counsel's failure to make one does not constitute deficient performance. *See Wilson v. Heath*, 938 F. Supp. 2d 278, 295 (E.D.N.Y. 2013) ("Counsel cannot be faulted for omitting meritless objections.").

Second, with regard to the trial court's handling of the jury note seeking clarification on the intent requirements, the New York Court of Appeals has articulated the following four step protocol to ensure counsel receives "meaningful notice," pursuant to CPL § 310.30, when a jury requests further instruction or information: (1) jurors' inquiries must be submitted in writing; (2) substantive written jury notes must be marked as court exhibits and read into the record in the presence of counsel; (3) trial courts should consult with counsel regarding appropriate responses; and (4) once the jury returns to the courtroom, the communication should be read in open court. *People v. O'Rama*, 78 N.Y.2d 270, 277-78 (1991). The Court of Appeals has referred to the *O'Rama* procedures as "guidelines" to maximize counsel

participation rather than rigid mandates. *People v. Lykes*, 81 N.Y.2d 767, 769 (1993).

The Court agrees with the Appellate Division that the trial court adequately complied with the *O'Rama* guidelines. *See Heron*, 130 A.D.3d at 756 (citing *People v. Evans*, 127 A.D.3d 780, 782 (2d Dep't 2015); *People v. Nunez*, 120 A.D.3d 714, 717 (N.Y. App. Div. 2d Dep't 2014)). Petitioner's assertion that counsel was deficient for failing to object to the court's response—simply rereading the intent definitions—when the jury sought clarification is meritless. In *People v. Tabb*, 13 N.Y.3d 852, 853 (2009), the New York Court of Appeals held that, "[i]n the absence of record proof that the trial court complied with its core responsibilities under CPL 310.30, a mode of proceedings error occur[s] requiring reversal." In *Tabb*, "[n]othing in the record indicate[d] that the court informed defense counsel and the prosecutor about the contents of the [jury] note." *Id.* Here, however, the trial court stated that it "shared the contents of the notes with both attorneys." (T. 573.) Additionally, because the transcript explicitly refers to an off-the-record conference where the jury notes were shared with the prosecutor and defense counsel and neither had any "exceptions" to the charge when asked (T. 573, 576), the Court finds that the record is not too sparse or silent to conclude that defense counsel was consulted with regarding appropriate responses. Thus, the trial court "afford[ed] meaningful notice to counsel and a meaningful response to the jury," the touchstone of the *O'Rama* procedure. *People v. Alcide*, 21 N.Y.3d 687, 693 (2013). Moreover, there was nothing erroneous about the trial court's decision to reread the intent definitions in response to the note. In light of defense counsel's participation in fashioning the court's response to the note and his lack of objection thereto, it is reasonable to conclude that counsel determined that there were no reasonable grounds on which to object and that

any objection would have been frivolous; accordingly, counsel cannot be deemed deficient for failing to register one. *See Vargo v. United States*, No. 06-CV-4846(NGG), 2008 WL 2437861, at *8 (E.D.N.Y. June 13, 2008) ("Trial counsel cannot be faulted for failing to make an objection that would be unlikely to succeed.").

Third, with regard to the court's handling of Juror Number 10's notes, the same *O'Rama* guidelines apply. Both attorneys were made aware of the nature of the particular matter—a pending civil court date scheduled for the next day—that, unaddressed, would have prevented Juror Number 10 from continuing with deliberations. (T. 582-83.) Additionally, because the conversation with Juror Number 10 was in the presence of the prosecutor, defense counsel, and petitioner (T. 577-83), the Court once again concludes that the trial court satisfied *O'Rama*'s requirements. *See Alcide*, 21 N.Y.3d at 693. Accordingly, counsel was not deficient for failing to object. *See Paige v. Lee*, 99 F. Supp. 3d 340, 346 (E.D.N.Y. 2015) ("The failure to make demonstrably futile arguments cannot constitute constitutionally ineffective assistance of counsel.") (quoting *Maldonado v. Burge*, 697 F. Supp. 2d 516, 541 (S.D.N.Y. 2010)).

Finally, with regard to counsel's alleged failure to move the trial court to disqualify Juror Number 10 as "grossly unqualified," the New York Court of Appeals has held that the "grossly unqualified" standard is "satisfied *only* when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict." *People v. Buford*, 69 N.Y.2d 290, 298 (1987) (emphasis added). Juror Number 10's failure to disclose the details of her scheduled pending civil matter during voir dire had no bearing on her impartiality. Additionally, contrary to petitioner's assertion, she did not fail to answer the court's questions during voir dire,

which only asked about *criminal* cases. (*See* J.S. 130-31.)   Thus, a motion to disqualify would not have succeeded, and counsel's failure to make one does not constitute deficient performance.  *See United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) ("[C]ounsel could not therefore have been ineffective for failing to make a motion that would have been futile.").

In any event, even assuming *arguendo* that counsel was deficient for these failure-to-object claims, given the overwhelming evidence, the Court finds that petitioner was in no way prejudiced as a result.  *See United States v. Reiter*, 897 F.2d 639, 645 (2d Cir. 1990) (holding that trial counsel's "collective errors, including her absences from trial, did not have any impact on the outcome of the trial" given the "*overwhelming*" record evidence that "left *no doubt* of guilt") (emphasis in original); *Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984) (finding that the "overwhelming" evidence, including eyewitnesses and physical and video evidence, overcame any potential prejudice that resulted from counsel's performance).  Accordingly, because petitioner fails to satisfy the *Strickland* standard, these ineffective assistance claims are denied.

### iii.  Counsel's Failure to Investigate

Failure to conduct adequate pretrial investigations may serve as the basis for ineffective assistance of counsel claims.  *See Strickland*, 466 U.S. at 690-91.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* at 691.  The reasonableness of counsel's decision to not investigate must be assessed in light of the totality of the circumstances.  *Id.*  There is a "heavy measure of deference" afforded to counsel's judgments.  *Id.*

To prevail on an ineffective assistance claim for counsel's alleged failure to investigate, a petitioner has the "burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."  *Taylor v. Poole*, No. 07 Civ. 6318(RJH)(GWG), 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009).   "[V]ague, conclusory, or speculative claims" will not suffice.  *Id.*  Furthermore, when counsel's alleged failure to investigate includes potential witnesses, "the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony."  *Id.* at *15.

### 1.  Mena's Toxicology Report and Crime Scene

Petitioner argues that trial counsel was ineffective for failing to conduct adequate pretrial investigations into Mena's toxicology report and the how police handled the crime scene.  The Court disagrees.

Petitioner claims the "totally barren" record did not show that his attorney searched for Mena's toxicology report and that his attorney "merely relied upon a 'voluntary disclosure agreement' between the prosecution and defense counsel."  (Def.'s 440 Mot. 11-12.)  However, Mena's autopsy and toxicology reports were disclosed to defense counsel.  (Resp't's Opp'n to 440 Mot. 4; Hr'g 6.)  Petitioner's bald assertions provide no specific information as to what counsel would have discovered had he investigated further.  Thus, counsel's performance cannot be deemed deficient.  *See Madarikan v. United States*, No. 95 CV 2052(SJ), 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying an ineffective assistance claim because petitioner's allegations were "conclusory, and g[a]ve no indication as to what exculpatory evidence may have been revealed").

Petitioner also claims that his attorney failed to "obtain[] the withheld videotape surveillance of footage that recorded the

16

events that transpired beyond the time frame of '13:48-13:54,' wherein the deceased's body and removal of evidence from Billy Mena's person may have occurred by others who approached him." (Def.'s 440 Mot. 21.) This claim is likewise without merit. Defense counsel received a full copy of the surveillance video. (Resp't's Opp'n to 440 Mot. at 3-4.) The surveillance video began before petitioner arrived at the scene and ended after the police arrived. (*See generally* People's Ex. 23.) Petitioner's assertion that someone could have "rummaged through Mena's pockets" and removed evidence—in particular, a weapon (Def.'s 440 Mot. 21-22)—is nothing more than unsupported, conclusory conjecture. This claim, therefore, must be denied. *See Paige*, 99 F. Supp. 3d at 349-50 ("Because Petitioner's claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief under either *Strickland* prong, it must be dismissed as meritless."); *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995) ("Because this claim is merely a conclusory allegation, petitioner has failed to establish that his counsel's performance was deficient. Petitioner's bald assertion that counsel should have conducted a more thorough pre-trial investigation fails to overcome the presumption that counsel acted reasonably.").

Petitioner seemingly claims that counsel's alleged failure to investigate ultimately resulted in an ineffective cross-examination, which, in turn, thwarted counsel's ability to successfully argue for a justification charge. In his Section 440 motion, petitioner asserted that "[c]ounsel's 'investigation,' if any in the case, was limited to trial 'cross examination' of certain prosecution witnesses that merely 'bolstered credibility' of witnesses and defendant was only prejudiced by such 'cross examinations.'" (Def.'s 440 Mot. at 27.) Petitioner specifically refers to counsel's cross-examination of the eyewitness: "Here,

[the eyewitness's] overall trial testimony [wa]s at odds with the 'time frames' of the videotaped recording of the entire incident. Had this particular witness been interviewed – pretrial – by a defense investigator, a number of things helpful to defendant Heron could have been established." (*Id.*) In short, petitioner asserts that the eyewitness's testimony "went without challenge to his 'credibility'" (*id.* at 28), which, as petitioner asserts, "was woefully deficient and prejudicial to defendant's cause of being actually innocent under the law of justification" (*id.* at 26). Even if this claim about counsel's cross-examination of the eyewitness is construed as an independent ineffective assistance of counsel claim, rather than merely a result of counsel's allegedly deficient investigation, it nonetheless fails.

"The conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *Eze*, 321 F.3d at 127 (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)). "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). However, defense counsel's performance with regard to a cross-examination may constitute ineffective assistance where "counsel fails to examine inconsistencies in witnesses' stories that are of 'enormous value' to the defense . . . [or] counsel fails to confront a witness with evidence that contradicts her testimony." *Paulino v. Zenk*, No. 02 Civ. 2735(DAB)(HBP), 2008 WL 356849, at *9 (S.D.N.Y. Feb. 7, 2008) (citing *Eze*, 321 F.3d at 132-33; *Harris v. Artuz*, 288 F. Supp. 2d 247, 259-60 (E.D.N.Y. 2003)).

The Court finds that defense counsel's performance regarding the cross-examination of the eyewitness was not objectively deficient. Contrary to petitioner's assertion, defense counsel did attack the eyewitness's credibility. Counsel probed the witness, who lived in Franklin Square for fourteen (14) years, about his familiarity with the neighborhood, his alcohol consumption that night, and his observations of the incident. (*See generally* T. 337-54.) Counsel, citing the eyewitness's prior grand jury testimony, noted inconsistencies in the witness's testimony regarding the timing of the incident. (*Id.* at 341-42). However, the timing inconsistencies revealed were not, as petitioner asserts, of "enormous value" to his defense. *See Paulino*, 2008 WL 356849, at *9. Furthermore, defense counsel, again citing the witness's grand jury testimony, questioned the witness about his observations (T. 342-49)—including some observations inconsistent with the video surveillance evidence in People's Ex. 23. Defense counsel thoroughly and sufficiently cross-examined the eyewitness. His failure to inquire into the minor points petitioner raises cannot be deemed unreasonable. *See, e.g.*, *Beauharnois v. Chappius*, No. 9:12-CV-1283 (FJS/ATB), 2015 WL 893091, at *27 (N.D.N.Y. Mar. 2, 2015) (determining that defense counsel's failure to ask about a "minor point" "d[id] not render trial counsel's cross examination of [the witness] objectively unreasonable"); *Jackson v. Lee*, 10 Civ. 3062, 2010 WL 4628013, at *42 (S.D.N.Y. Nov. 16, 2010) ("[T]rial counsel's failure to question [the witness] on [a] minor point was not unreasonable nor ineffective conduct."). Thus, the Court cannot conclude that counsel's performance was objectively deficient. *See United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) ("We will not second guess trial counsel's defense strategy simply because the chosen strategy has failed." (citing *United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir. 1982), *cert denied*, 456 U.S. 929 (1982))).

In any event, petitioner fails to demonstrate that he was prejudiced by counsel's alleged failure to investigate Mena's toxicology report and the surveillance video. Even assuming *arguendo* that the toxicology report had not been turned over and defense counsel was deficient for failing to investigate it, as discussed above, Mena's toxicology results would not have enabled petitioner to establish a justification defense. Also, even assuming counsel's investigation of the surveillance footage was deficient, no additional video evidence could have been uncovered to exculpate petitioner because the *complete* surveillance video *was* turned over to defense counsel.

With respect to counsel's cross-examination, the Court concludes that, given the overwhelming evidence against the petitioner, this cross-examination claim also fails to satisfy *Strickland*'s prejudice prong. *See Gersten*, 426 F.3d at 611 ("Where there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus." (citing *Lindstadt*, 239 F.3d at 204)). Therefore, the Court denies petitioner's ineffective assistance claims with regard to counsel's alleged failure to investigate Mena's toxicology report and the surveillance video and counsel's cross-examination of the eyewitness.

2. Mena's Background

Petitioner further argues that trial counsel was ineffective for failing to investigate Mena's reputation for dishonesty, criminal history, and propensity for violence. Petitioner specifically notes counsel's failure to use a private investigator to locate witnesses to testify on his behalf. The Court finds that this claim lacks merit.

Counsel's decision not to investigate further cannot be deemed unreasonable because petitioner proffers nothing but conclusory, unsupported speculation about

potential witnesses that could have testified about Mena's background. *See, e.g., Curry v. Burge*, No. 03 Civ.0901 LAK AJP, 2004 WL 2601681, at *31 (S.D.N.Y. Nov. 17, 2004) ("These claims are conclusory and give no indication as to what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted [petitioner's] case. There is also no way to know that trial counsel did not consider investigating these claims but simply rejected them as being unpromising."); *Polanco v. United States*, Nos. 99 Civ. 5739(CSH), 94 Cr. 453(CSH), 2000 WL 1072303, at *10 (Aug. 3, 2000) ("Such undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong."). Moreover, petitioner's claims provide no indication as to what potential evidence could have been discovered had his counsel located witnesses to testify on his behalf. *See Miller v. Boucaud*, No. 09-CV-6598(MAT), 2012 WL 3262426, at *8-9 (W.D.N.Y. Aug. 8, 2012) (holding counsel was not deficient for failing to investigate potential witnesses because petitioner provided no sworn statement detailing their alleged exculpatory testimony); *Brito*, 2011 WL 1542516, at *9-11 (holding counsel's decision not to investigate or present at trial three specific witnesses was not objectively unreasonable because petitioner failed to demonstrate that they possessed exculpatory evidence); *Ortiz v. Heath*, No. 10-CV-1492 (KAM), 2011 WL 1331509, at *11-12 (E.D.N.Y. Apr. 6, 2011) (finding counsel's failure to investigate potential witnesses not unreasonable because petitioner provided no indication as to whether they would have testified and what, if any, exculpatory evidence they could have offered). Therefore, because petitioner provides no indication that an investigation would have produced exculpatory evidence and changed the outcome of his trial, the Court denies these claims.

As discussed *supra* with regard to petitioner's other ineffective assistance claims, petitioner fails to establish prejudice as a result of counsel's alleged failure to investigate these matters, and any attempt to do so would be futile in light of the overwhelming evidence of petitioner's guilt. *See Gersten*, 426 F.3d at 611; *see also Reiter*, 897 F.2d at 645; *Wise*, 735 F.2d at 739.

### iv. Counsel's Failure to Apprise Defendant of Plea Offer

Finally, petitioner alleges counsel was deficient for failing to tell him "whether the prosecution was willing to allow [him] to 'plead guilty' to a lesser offense." (Def.'s Section 440 Mot. 24.) This claim is baseless.

"[T]here can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain *offered* by the prosecution." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (quoting *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir.1999) (emphasis added)); *accord Missouri v. Frye*, 566 U.S. 134 (2012). Here, however, the prosecution never offered petitioner a plea bargain. Defense counsel contacted the prosecutor and "inquired whether there was any possibility that [petitioner] would be allowed to plead guilty to manslaughter." (Resp't's Opp'n to 440 Mot. Ex. 4.) Defense counsel was told that "no such plea offer would be extended." (*Id.*) Counsel cannot have a duty to inform his client of a plea bargain if no plea bargain was ever offered. Defense counsel's failure to apprise his client of a nonexistent plea offer cannot constitute deficient performance, and therefore, the Court denies this claim.

## 2. Suppression of Evidence

### a. *Brady* Violations (Toxicology Report and Surveillance Video)

Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 280-81 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). Failure to disclose such material merits relief only if the prosecution's failure "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

In order to demonstrate a *Brady* violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (citing *Strickler,* 527 U.S. at 281-82).

Petitioner's bald assertion that Mena's toxicology report and the surveillance video were suppressed are insufficient to establish a *Brady* violation. *See Martinez v. Phillips*, No. 04 Cv. 8617(RPP), 2009 WL 1108515, at *24 (S.D.N.Y. Apr. 24, 2009) ("Only after the petitioner has made a plausible showing that . . . the government has in fact concealed [the challenged materials], can the court endeavor to determine whether a *Brady* violation occurred."); *Mallet*, 432 F. Supp. 2d at 377 ("It is well established that the mere speculation that exculpatory evidence

was withheld is insufficient to warrant habeas relief."); *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998) ("Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [petitioner] to relief . . . ."); *United States v. Upton*, 856 F. Supp. 727, 746 (E.D.N.Y. 1994) (explaining that "mere speculation" is insufficient to establish a *Brady* violation). Mena's autopsy report, which included his toxicology report, and a full copy of the video surveillance, which began before petitioner arrived at the scene and ended after the police arrived, were in fact disclosed to defense counsel. (Resp't's Opp'n to 440 Mot. 3-4; Hr'g 6; People's Exhibit 23.) Thus, because these items "w[ere] not 'suppressed' by the government," they cannot even be classified as *Brady* material. *Skinner v. Duncan*, No. 01 Civ.6656 DAB AJP, 2003 WL 21386032, at *21 (S.D.N.Y. June 17, 2003); *see also Parker v. Herbert*, No. 02-CV-0373(RJA)(VEB), 2009 WL 2971575, at *40 (W.D.N.Y. May 28, 2009) ("[S]uppression of evidence may occur where the state prosecutor has actual possession or knowledge of the evidence and fails to disclose it to the defense." (citing *United States v. Pena*, 227 F.3d 23, 27 n.3 (2d Cir. 2000))). Accordingly, petitioner's claim fails.

Moreover, even assuming *arguendo* that petitioner's allegations of suppression by the prosecutor of Mena's toxicology report and the "complete" surveillance video are true, petitioner has failed to demonstrate that he suffered prejudice. Given the overwhelming evidence that demonstrates petitioner intentionally murdered Mena, as previously discussed, there is no possibility that the alleged suppression would have changed the outcome of the trial. *Strickler,* 527 U.S. at 281 ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Quintana v. Armstrong*,

337 F. App'x 23, 25 (2d Cir. 2009) ("We look at the cumulative effect of suppression in light of the evidence as a whole." (quoting *United States v. Jackson*, 345 F.3d 59, 74 (2d Cir. 2003)); *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998) (finding that "the strength of the independent evidence of appellees' guilt increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it reasonably to undermine the confidence in the verdict"); *United States v. Payne*, 63 F.3d 1200, 1209-10 (2d Cir. 1995) (finding no *Brady* violation because, although an affidavit that was favorable to the defendant was suppressed, it would have only diminished "but a fraction of the evidence linking" the defendant to the crime); *Jansen v. Monroe Cty.*, 430 F. Supp. 2d 127, 134 (W.D.N.Y 2006) ("[G]iven the overwhelming evidence that [petitioner] did commit the crime with which he was charged, the Court finds no 'significant possibility' that the trial would have ended differently had the *Brady* material been disclosed in a more timely fashion." (quoting *Strickler*, 527 U.S. at 300-01)). Accordingly, petitioner's alleged *Brady* violations are denied.

### b. FOIL Request

Petitioner's final claim for habeas relief— couched as a suppression of evidence claim— is the denial of his FOIL request. Following his conviction in state court, petitioner submitted a FOIL request to the Nassau County District Attorney's Office, seeking copies of the "pre-Indictment Plea offer" and "ADA status sheet" with respect to his case. (Pet'r's FOIL Request.) Petitioner's request was denied because neither document existed in the prosecution file. (Denial of FOIL Request.) Petitioner maintains that these documents "pertain[] to [his] case and support[] actual innocence." (Pet. 6.)

Petitioner's claim must be denied because it "does not state a claim that is cognizable under federal habeas review." *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011). The denial of petitioner's FOIL request, which occurred post-conviction, does not implicate federal law. *See id.* at 132 ("[F]ederal law does not require states to provide a post-conviction mechanism for seeking relief."). Moreover, petitioner's allegations cannot be construed as a challenge to the constitutionality of New York's Freedom of Information Law because "a § 2254 petition is not a proper vehicle for challenging deficiencies in a state post-conviction proceeding." *Word*, 648 F.3d at 129. Thus, the Court may not consider this claim in the present action.

To be sure, the Supreme Court has recognized that, under the due process clause of the Fourteenth Amendment, a prisoner "ha[s] a liberty interest in demonstrating his innocence with new evidence under state law." *Dist. Attorney's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009). However, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* "[His] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.* at 69.

In *Osborne*, the Supreme Court rejected the notion of a substantive due process right of post-conviction access to DNA evidence. *See id.* at 68-72. Thus, "[s]imilarly, [a prisoner] lacks a general right to documents in the government's possession that could be germane to the question of his guilt or innocence," *McLean v. Brown*, No. 08-CV-5200 (JG), 2010 WL 2609341, at *6 (E.D.N.Y. June 25, 2010), let alone documents that do not exist. Because petitioner has no post-conviction right to the nonexistent documents sought through his FOIL request, his claim states no basis for federal habeas relief. *See, e.g.*, *McKithen v. Brown*, 626 F.3d 143, 153

(2d Cir. 2010) ("[L]ower federal courts are to defer to the judgment of state legislatures concerning the process due prisoners seeking evidence for their state court post-conviction actions."); *McLean*, 2010 WL 2609341, at *6 ("Facing a conviction determined to be constitutionally valid by state and federal courts, [petitioner] has no general right to material exculpatory evidence."); *Green v. Walsh*, 03 Civ. 0908, 2006 WL 2389306, at *20 (S.D.N.Y. Aug. 17, 2006) ("There is no constitutional provision that even requires a state to grant post-conviction review, and, therefore, most federal courts have rejected due process claims arising out of the conduct of state courts in post-conviction proceedings, holding that such claims are also not cognizable on habeas review." (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) and *Jones v. Duncan*, 162 F. Supp. 2d 204, 217-19 (S.D.N.Y. 2001))). Accordingly, petitioner's claim with respect to his FOIL request is denied.

## VI. CONCLUSION

For the reasons set forth above, the Court concludes that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: March 5, 2019
Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Madeline Singas, District Attorney, Nassau County, 262 Old Country Road, Mineola, NY 11501.